**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| ELECTRONIC MAINTENANCE ASSOCIATES, INC. and ELECTRONIC MAINTENANCE ASSOCIATES OF NEW YORK, INC., | ) | |
| Plaintiffs, | ) | CIVIL ACTION FILE NO.: 1:26-cv-03121-ELR |
| v. | ) | |
| FIRST HORIZON BANK CORP., | ) | |
| Defendant. | ) | |

**DEFENDANT FIRST HORIZON BANK'S MEMORANDUM OF LAW IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Defendant First Horizon Bank[1] ("First Horizon"), by and through undersigned counsel, pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby files this Memorandum of Law in Support of its Partial Motion to Dismiss Plaintiffs' Complaint. In support, First Horizon states as follows:

## INTRODUCTION

Plaintiffs Electronic Maintenance Associates, Inc. and Electronic Maintenance Associates of New York, Inc. (collectively, "Plaintiffs") commenced

[1] First Horizon Bank was improperly named in the Complaint as First Horizon Bank Corp.

this action with a Complaint against First Horizon in the Superior Court of Gwinnett County, Georgia on April 16, 2026 (the "Complaint"). First Horizon timely removed this action based on diversity jurisdiction. *See* 28 U.S.C. § 1332(a)(1).

This action arises from wire transfers from Plaintiffs' deposit accounts on or about October 22, 2025 in the amount of $2,724,290.28. Although Plaintiffs admit that the wire transfers were orchestrated by a bad actor using Plaintiffs' online banking credentials provided by Plaintiffs' representative over a four (4) hour period, Plaintiffs assert that the wire transfers were not authorized and seek to hold First Horizon responsible for the withdrawal of the funds from Plaintiffs' accounts.

Plaintiffs assert eight claims against First Horizon in the Complaint: (1) breach of contract (Counts I and II); (2) negligence (Counts III and IV); (3) violation of O.C.G.A. § 11-4A-202 (Counts V and V (sic)[2]); and (4) expenses of litigation under Georgia's bad faith statute, O.C.G.A. § 13-6-11 (VII and VII (sic)[3]). As set forth below, Plaintiffs' negligence claims against First Horizon for allegedly failing

---

[2] Plaintiffs' Complaint identifies two counts labeled as "Count V: Violation of O.C.G.A. § 11-4A-202" with one identifying "as of EMA" and the other identifying "as of EMA of New York". *See* Compl. ¶ 45-64.

[3] Plaintiffs' Complaint identifies two counts labeled as "Count VII: Attorney's Fees" with one identifying "as of EMA" and the other identifying "as of EMA of New York". *See* Compl. ¶ 65-74.

to stop fraudulent wire transfers fail to state a claim upon which relief can be granted and should be dismissed with prejudice.

## ALLEGATIONS OF THE COMPLAINT[4]

Plaintiffs maintained deposit accounts with First Horizon, including the accounts ending in 7245 (the "Georgia Account") and 5987 (the "New York Account") (collectively, the "Accounts"). Compl., ¶ 7. Plaintiffs allege that the Accounts are governed by the Wire Funds Transfer Services Agreement ("the Agreement").[5] *See* Compl., ¶ 6 and Exhibit A. Plaintiffs bring this lawsuit seeking to recover funds that were transferred from the Accounts. *See* Compl., ¶ 24.

Plaintiffs allege that Amber Lamb ("Ms. Lamb"), Plaintiffs' Vice President, received a telephone call from an individual purporting to be an employee of First Horizon on October 22, 2025. *Id*. at ¶ 11. Plaintiffs allege that the caller claimed that an individual was attempting to cash a check at a First Horizon branch in Tennessee and the transaction was flagged as potential fraud. *Id*. at ¶ 12. Plaintiffs

[4] All factual allegations in the Complaint that First Horizon recites herein are stated only for the purpose of this Motion. First Horizon does not admit that any allegations in the Complaint are true.

[5] Following Plaintiffs' execution of the Agreement in 2015, Plaintiffs subsequently executed various account agreements and documentation with First Horizon that First Horizon contends controls the parties' rights with regard to the Accounts, in contrast to Plaintiffs' allegation that the Agreement controls.

allege that Ms. Lamb was then transferred to another individual purporting to be employed in First Horizon's fraud department. *Id*. at ¶ 13.

Plaintiffs allege that Ms. Lamb remained on the call with the purported fraud department for over four (4) hours, during which time Ms. Lamb provided "Plaintiffs' online banking login credentials and RSA security token" to the caller. *Id*. at ¶ 14. Plaintiffs allege that during the call, Ms. Lamb received a message from an actual employee of First Horizon, Bobbie Docher ("Ms. Docher"), the branch manager of the Peachtree Corners, Georgia location, concerning suspected fraudulent activity related to Plaintiffs' accounts. *Id*. at ¶¶ 15, 16. Plaintiffs allege that upon the request of Ms. Lamb, at or around 3:30 p.m., Trey Mayfield ("Mr. Mayfield"), Plaintiffs' Chief Executive Officer, called Ms. Docher and informed her that there was fraudulent activity occurring with Plaintiffs' accounts. *Id*. at ¶¶ 17, 18.

Plaintiffs allege that on October 22, 2025, wire transfers were processed from the Accounts between 2:09 p.m. and 6:24 p.m., with more than sixty (60) wire transfers being processed after Plaintiffs notified First Horizon of the fraudulent activity. *Id*. at ¶¶ 19, 20. Ms. Lamb contacted Ms. Docher on October 23, 2025 to inform her that she spoke with the purported fraud department on October 22, 2025 and Ms. Lamb believed that multiple wire fraud attempts had been stopped. *See* Compl., Exhibit B. Plaintiffs allege that on October 23, 2025, Ms. Docher requested

that Ms. Lamb and Mr. Mayfield meet her at the bank branch at which time Ms. Docher informed them that $2,724,290.28 was wired from the Accounts on October 22, 2025. *Id*. at ¶ 21. Plaintiffs allege that some of the wired funds have been recovered, but First Horizon still owes $54,841.95 to the Georgia Account and $1,244,046.77 to the New York Account, and First Horizon refused to remit the funds despite demand. Compl., ¶¶ 24-26 and Exhibit B.

## <u>LAW AND ARGUMENT</u>

### I. Standard of Review.

On a Rule 12(b)(6) motion, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). To that end, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Rather, courts consider whether the complaint asserts "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A plausible claim for relief must include sufficient "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citations omitted). Where the facts show only a mere possibility of misconduct, they are insufficient to support a plausible claim. *Id*. at

679. "Stated differently, the factual allegations in the complaint must possess enough heft to set forth a plausible entitlement to relief." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (internal punctuation and citations omitted).

## II. Counts III and IV of the Complaint Fail to State a Claim

Plaintiffs' negligence claims in Counts III and IV fail as a matter of law for at least two reasons. First, Article 4A of the Uniform Commercial Code ("UCC"), as adopted in Louisiana and Georgia[6], preempts Plaintiffs' common law claims for negligence. Second, the Agreement controls the relationship and duties between Plaintiffs and First Horizon.

### A. The UCC Governs the Funds Transfers Alleged by Plaintiffs

Louisiana has adopted Article 4A of the UCC, La. R.S. 10:4A-101 *et seq*., ("Article 4A") which specifically applies to "funds transfers." A "funds transfer" is made by means of one or more "payment orders." U.C.C. § 4-102, Article 4 official comment (2022). A "payment order" is defined as "an instruction of a sender to a receiving bank, transmitted orally, electronically, or in writing, to pay, or to cause

---

[6] The Agreement is governed by Louisiana law. *See* Compl., Exhibit A, ¶ 7.2 ("The Agreement will be construed in accordance with and governed by the Federal Reserve Bank's operating instructions, applicable federal laws and the laws of the State of Louisiana[.]"). Accordingly, First Horizon cites to Louisiana law. However, with respect to the UCC Article 4A component of this Motion, the result is no different under Georgia law because the Georgia Legislature has enacted a nearly identical version of Article 4A. *See* O.C.G.A. §§ 11-1- 101 *et seq*.

another bank to pay, a fixed or determinable amount of money to a beneficiary if ... the receiving bank is to be reimbursed by debiting the account of, or otherwise receiving payment from, the sender ...” La. R.S. 10:4A- 103(a)(1). A “funds transfer” means the series of transactions, beginning with the originator’s payment order, made for the purpose of making payment to the beneficiary of the order.” La. R.S. 10:4A-104(a). La. R.S. 10:4A-202-212 provides a remedy to account holders who prove that the transfer was made in violation of a commercially reasonable security procedure.

Plaintiffs allege that First Horizon continued to process wire transfers from the Accounts despite receiving notice from Mr. Mayfield of the existence of fraudulent activity with Plaintiffs’ accounts. Compl., ¶ 18. Such wire transfers fall squarely within the scope of Article 4A. *See Priority Staffing, Inc. v. Regions Bank*, No. CIV. A. 5:11-0667, 2013 WL 5462239, at *1 (W.D. La. Sept. 30, 2013) (plaintiff’s employee obtained the username and password for the plaintiff’s online banking account and made hundreds of fraudulent electronic transfers. The Court found that these unauthorized electronic funds transfers were governed by Article 4A of the UCC).

**B. Article 4A of the UCC Preempts Plaintiffs’ Common Law Claims.**

Plaintiffs' negligence claims fail because Article 4A controls the rights and liabilities between the parties to a funds transfer. As a result, Plaintiffs' negligence claims are preempted and must be dismissed.

Plaintiffs cannot maintain negligence claims against First Horizon because La. R.S. 10:4A-101, *et seq.* preempts common law claims:

> **The rules … are intended to be the exclusive means of determining the rights, duties, and liabilities of the affected parties in any situation** covered by the particular provisions of this Article. Consequently, resort to principles of law or equity outside of Article 4A is not appropriate to create rights duties and liabilities inconsistent with those stated in this Article.

U.C.C. § 4A-102, Article 4A official comment (2022) (emphasis added).

Article 4A's preemption of common law claims is well-settled in Louisiana. *See Squeeze Me Once, LLC v. Suntrust Bank*, Civil Action No. 19-787-JWD-RLB, 2020 WL 12968001, at *10 (M.D. La. Aug. 3, 2020) (stating, "The rights and obligations of SunTrust concerning how the wire transfer was conducted and the actions it was obligated to take as the beneficiary bank are set forth in the UCC, and therefore SMO's negligence claims concerning the wire transfer itself are preempted by Article 4A"); *Ducote v. Whitney Nat'l Bank,* 16-574 (La. App. 5 Cir. 2/22/17), 212 So. 3d 729, 736, (stating, "the UCC allows a customer to recover in the event the customer proves the bank was negligent in paying an item. Because the UCC provides a remedy to plaintiffs for [defendant's] alleged failure to exercise ordinary

care, plaintiffs' claims against [defendant] which they argue fall outside of the UCC are barred.").[7]

Moreover, federal district courts in this Circuit consistently apply the preemption doctrine when a plaintiff's allegations arise under the UCC. *See, e.g., Regions Bank v. Provident Bank, Inc*., 345 F.3d 1267, 1274 (11th Cir. 2003) ("Parties whose conflict arises out of a funds transfer should look first and foremost to Article 4A for guidance in bringing and resolving their claims . . . . [4A is] intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties.") (internal citations and quotations omitted); *Estate of Bass v. Regions Bank, Inc.*, 947 F.3d 1353, 1361 (11th Cir. 2020) (upholding district court's determination that common law claims for negligence and conversion are preempted by the UCC); *Zeal Glob. Services Priv. Ltd. v. SunTrust Bank*, 508 F. Supp. 3d 1303, 1310-11 (N.D. Ga. 2020) (finding meritless argument that common law should govern rather than Article 4A where claims arise from wire transfer); *Rosenfeld Gallery, LLC v. Truist Bank*, 719 F. Supp. 3d 1270, 1276 (S.D. Fla. 2024) ("[W]here the rights, duties, and liabilities of the parties are governed by the U.C.C., the Code

---

[7] Article 4A's preemption is recognized in Georgia as well. *See*, *e.g.*, *First Ga. Bank v. Webster*, 168 Ga. App. 307, 308, 308 S.E.2d 579, 581 (Ga. App. 1983) (holding that "where the [Georgia UCC] provides a comprehensive remedy for parties to a transaction, a common law action would be barred").

displaces common law claims."); *Madison Title Agency, LLC v. Bank of Am., N.A.*, 672 F. Supp. 3d 1313, 1317 (N.D. Ga. 2023) (Calvert, J.) (agreeing with rationale of *Zeal Global Services*, supra); *J.L. Lane Lending, LLC v. Wells Fargo Bank Nat'l Ass'n*, 543 F. Supp. 3d 1225, 1230-32 (M.D. Ala. 2021) (granting the bank's motion to dismiss plaintiff's negligence and fraud claims stemming from wrongful funds transfers because such transfers were covered, and preempted, by Article 4A).

Federal courts in other jurisdictions have reached the same result as the courts in the Eleventh Circuit.[8] *See, e.g., Wright v. Citizens Bank of East Tennessee*, 640 Fed. Appx. 401, 406 (6th Cir. 2016) (recognizing that several courts "have held that Article 4A displaces common-law claims relating to wire transfers if the claims [1] arise out of a situation addressed by Article 4A or [2] attempt to create rights, duties, or liabilities inconsistent with Article 4A."); *Berry v. Regions Fin. Corp.*, 507 F. Supp. 3d 972, 979 (W.D. Tenn. 2020) ("Article 4A displaces Plaintiffs' common law negligence claims against all Defendants because the Defendants' conduct [arising from a wire transfer] alleged by the Plaintiffs is within the scope of Article

[8] When courts interpret statutes modeled after the UCC, they may resort to the holdings of other jurisdictions that have adopted the UCC. *See, e.g., In re Pillowtex, Inc.*, 349 F.3d 711, 718 n.8 (3d Cir. 2003) ("[D]ecisions from other jurisdictions interpreting this same uniform statute are instructive."); *In re Grubbs Const. Co.*, 319 B.R. 698, 712 (Bankr. M.D. Fla. 2005) ("Since the UCC has been adopted by all 50 states, and given the uniformity purpose of the UCC, decisions from other states are relevant."). Here, resorting to other jurisdictions is appropriate because few Louisiana state court cases interpret Sections 4A-202, 203, and 204.

4A."); *Cumis Ins. Soc., Inc. v. Citibank, N.A.*, 921 F. Supp. 1100, 1110 (S.D.N.Y. 1996) (claim for conversion failed because defendant bank's actions were expressly authorized by Article 4A); *Cosmopolitan Title Agency, LLC v. JP Morgan Chase Bank, N.A.*, 649 F. Supp. 3d 459, 461, 464 (E.D. Ky. 2023) (dismissing common law claims of conversion, negligence, and negligence per se against a bank for fraudulent wire transfers because wire transfers fell within Article 4A's provisions and preempted those common law claims).

Because the risk of loss for allegedly unauthorized wire transfers is covered by Article 4A—specifically, §§ 4A-202, 203, and 204—Plaintiffs "cannot jam square U.C.C. claims into a round common law hole." *See Zeal Glob. Servs. Priv. Ltd. v. SunTrust Bank*, 508 F. Supp. 3d 1303, 1311 (N.D. Ga. 2020). Thus, Plaintiffs' common law claims for negligence are preempted and should be dismissed with prejudice.

### C. Even if Plaintiffs' Claims for Negligence are not Preempted by Article 4A, They Still Fail because the Agreement Plaintiffs Rely Upon Identifies Such Disputes are Governed by Article 4 of the UCC.

Plaintiffs assert that First Horizon is liable for negligence because First Horizon breached its duty in connection with the fraudulent wire transfers. *See* Compl., ¶¶ 39, 43. Plaintiffs' claims for negligence also fail because the Agreement Plaintiffs rely upon is limited and governed in accordance with Article 4 of the UCC. *See* Compl., Exhibit A. Plaintiffs cannot simply ignore a contract that they contend

is central to the legal relationship of the parties and assert tort claims. Indeed, Plaintiffs are simply trying to recast a breach of contract claim into a tort claim of negligence. Louisiana law forecloses Plaintiffs' attempt to do so.

Under Louisiana law, the contract between the parties is the law that governs the parties. La. Civil Code art. 1983. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the party's intent." *Fairbanks Davenport LLC v. Johnson*, 330 So.3d 183, (La. 9/30/21) (citing La. Civil Code art. 2046). Louisiana courts consistently hold that a bank's agreement with its customer is the governing law between them and that banks may limit their liability in their contracts with their customers. *See, e.g.*, *Groue v. Capital One*, 2010-0476 (La. App. 9/10/10), 47 So.3d 1038 (concluding bank was not liable for any forgeries because the customer/Plaintiff failed to notify the bank of the forgeries within the time limit set forth in the contract, recognizing the rights of the parties to "contractual freedom"); *Peak v. Tuscaloosa Commerce Bank*, 96-128 (La. App. 1st Cir. 12/29/97), 707 So.2d 59 (bank was allowed to limit its liability with regard to forged checks if not timely notified; "it is well settled under our law that parties may contract for any object which is lawful, possible, determined or determinable. Louisiana Civil Code art. 1971. . . Once a contract has been established, it becomes the law between the parties. Louisiana Civil Code art. 1983"); *Gaudin & Gaudin v. Iberia Bank Corporation*, 19-459 (La.

App. 5th Cir. 3/17/20), 293 So.3d 755 (deposit account agreement relieved the bank of any liability to the Plaintiff for unauthorized check transactions that occurred after the required notification period in the account agreement). Further, Louisiana law makes clear that duties arising out of a contract cannot be used to convert a contract claim into a tort claim. *See*, *e.g*., *Everett v. Philibert*, 13 So. 3d 616, 620 (La. App. 1st Cir. 2009) (a plaintiff must show that their negligence claims are separate and distinct and not arising from a duty imposed by the parties' contract).

In the event that Plaintiffs argue that Georgia law applies, the result does not change. *See Freese v. Regions Bank, N.A.*, 284 Ga. App. 717, 720–721, 644 S.E.2d 549 (Ga. App. 2007) (stating, "The UCC permits parties to a contract of deposit to agree between themselves as to their duties and the legal consequences which flow therefrom. An account agreement is controlling unless it is manifestly unreasonable.") (internal citations omitted); *see also Fielbon Development Co., LLC v. Colony Bank of Houston Cty.*, 290 Ga. App. 847, 855, 660 S.E.2d 801, 808 (Ga. App. 2008) (*quoting.S & A Indus. v. Bank Atlanta*, 247 Ga. App. 377, 381, 543 S.E.2d 743 (Ga. App. 2000)) ("a defendant's mere negligent performance of a contractual duty does not create a tort cause of action; rather, a defendant's breach of a contract may give rise to a tort cause of action only if the defendant has also breached an independent duty created by statute or common law.").

The Agreement, which Plaintiffs rely upon, provides:

> 6.2 Unauthorized Payment Orders. If a payment order in the name of the Client accepted by the Bank was not authorized by the Client, **the liability of the parties will be governed by the applicable provisions of UCC 4A.**

Compl., Exhibit A (emphasis added). Provisions in a contract which limit a party's liability are enforceable under Louisiana law. *See Ingraham v. Planet Beach Franchise Corp*, Civil Action No. 07–3555, 2009 WL 1076713, *1 (E.D. La. April 17, 2009) (Agreement waiving the right to seek "consequential damages" was enforceable under Louisiana law). Because Plaintiffs' common law negligence claims relate to and arise out of the wire transfers from the Accounts, Plaintiffs' negligence claims should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendant First Horizon Bank respectfully requests that the Court grant its partial motion to dismiss Plaintiffs' claims for negligence and grant First Horizon bank all other relief to which it may be justly entitled.

Respectfully submitted this 10th day of June, 2026.

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**
*/s/ Kathleen G. Furr*
Kathleen G. Furr
GA Bar No. 589008
3414 Peachtree Rd., NE, Ste 1500
Atlanta, Georgia 30326
Phone: 404.221.6533
Fax: 404.221.6501
kfurr@bakerdonelson.com
*Counsel for First Horizon Bank*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document has been prepared in 14-point Times New Roman font and complies with LR 5.1(B).

Respectfully submitted this 10th day of June, 2026.

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**

*/s/ Kathleen G. Furr*
Kathleen G. Furr
GA Bar No. 589008
3414 Peachtree Rd., NE, Ste 1500
Atlanta, Georgia 30326
Phone: 404.221.6533
Fax: 404.221.6501
kfurr@bakerdonelson.com
*Counsel for First Horizon Bank*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day filed a copy of the foregoing ***Defendant First Horizon Bank's Memorandum of Law in Support of Partial Motion to Dismiss Plaintiffs' Complaint*** with the Clerk of Court using the Court's ECF system which served a copy of same via electronic mail to all counsel of record.

Michael D. Cross, Jr.
Cooper J. Branham
Briskin, Cross & Sanford, LLC
33 S. Main Street, Suite 300
Alpharetta, Georgia 30009
mcross@briskinlaw.com
cbranham@briskinlaw.com
*Attorneys for Plaintiffs*

Respectfully submitted the 10th day of June, 2026.

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**

*/s/Kathleen G. Furr*
Kathleen G. Furr
GA Bar No. 589008
kfurr@bakerdonelson.com

*Counsel for First Horizon Bank*